J-S25020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| DIMITRIUS BROWN | : | |
| Appellant | : | No. 1973 EDA 2020 |

Appeal from the PCRA Order Entered October 1, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012767-2015

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED NOVEMBER 19, 2021**

Dimitrius Brown appeals from the order denying his Post Conviction Relief Act petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Brown claims the PCRA court erred in denying his motion for a continuance of the evidentiary hearing until a time when he could attend in person. We affirm.

In July 2017, a jury convicted Brown of Third-Degree Murder, Possession of a Firearm by a Prohibited Person, Firearms Not to Be Carried Without a License, and Carrying a Firearm on a Public Street in Philadelphia.[1] In September 2017, the trial court sentenced Brown to an aggregate sentence of 22.5 to 45 years' imprisonment. Brown appealed, and we affirmed the judgment of sentence in April 2019. Brown filed a timely *pro se* PCRA petition.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c), 6105(c)(8), 6106(a)(1), and 6108, respectively.

Brown retained counsel, who filed an amended petition arguing that Brown's trial counsel was ineffective for raising an alibi defense, rather than a claim of self-defense.[2]

The court scheduled an evidentiary hearing for October 1, 2020. Brown requested a continuance until he could attend the hearing in person. The court denied the motion, noting that due to COVID-19 pandemic restrictions, prisoners were not being transported from the state prison for PCRA hearings, and there was no known end date to that policy:

> When this virus hit, our Pennsylvania Supreme Court issued orders as to how the courts should operate, and one of those orders included a suspension of the state rules governing the ban, basically -- historic ban on audiovisual hearings.
>
> Since this time -- and then they left it in the discretion, after so many months, of the local jurisdictions' president judges to continue and to have hearings in the best way possible for everyone.
>
> So, in an ideal world, I would have granted that continuance and would have brought you down. The problem we have is it's March, April, May, June, July, August, September, and now October, and I have not been able to get any information that the transfer and the transportation of state prisoners will begin again at any time in the near future.
>
> So, Mr. Mosser knows, I explored the possibility of having our own sheriffs go up and get Mr. Brown. The problem with that is, they agreed they could do that, but Mr. Brown -- Huntingdon, or any other state -- I didn't do it specifically

---

[2] After Brown filed the *pro se* petition, trial counsel filed a PCRA petition seeking reinstatement of Brown's right to file a petition for allowance of appeal to the Pennsylvania Supreme Court. Brown subsequently retained counsel, who filed an amended petition, which did not include this claim.

for Mr. Brown, but a general question -- the state won't take him back for 14 days.

Okay, so, it really wouldn't work because then, what would happen is, you would go into quarantine in the [] county because the state wouldn't take you back for about 14 days, at a minimum.

N.T., 10/1/20, at 6-8.

Counsel again placed his objection on the record, noting federal cases that discuss that a defendant has a right to be physically present in the courtroom. *Id.* at 9 (citing *Kentucky v. Stincer*, 482 U.S. 730 (1987), and *Drew v. Wetzel*, C.A. No. 15-2725, 2017 WL 1326141 (E.D. Pa. 2017)). The Commonwealth also objected, noting "[it was] concerned about potential appellate issues if he's not brought down." *Id.* at 9-10. The trial court confirmed that the cases did not discuss state proceedings being conducted during public health crises and counsel stated they did not. *Id.* at 10. The court concluded Brown "is entitled to move this petition along." *Id.*[3]

Before beginning the hearing, the court ensured that Brown had an opportunity to speak with his PCRA counsel and that Brown was prepared for the hearing. *Id.* at 9. Further, before Brown testified, he again spoke with counsel in private. *Id.* at 87-89.

At the hearing, Brown attended and testified via video, trial counsel testified via video, and Brown's uncle Thomas Wheeler testified in person.

---

[3] The day of the hearing, Brown filed a motion for leave to file an amended PCRA petition. The second amended petition contained a witness statement. The PCRA court granted the motion to amend the petition and permitted the witness to testify.

- 3 -

Following the hearing, the court denied the PCRA petition. Counsel filed a motion to withdraw. The court granted the motion and appointed new counsel, who filed a timely notice of appeal.

Brown filed an application for remand to file a supplemental statement of errors. This Court granted the application, and, following remand, counsel filed a supplemental statement claiming the court "erred and abused its discretion when [it] denied [] Brown's request to continue the evidentiary hearing," stating "Brown requested the continuance because he was not physically present due to restrictions associated with the pandemic." Supplemental Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), filed Feb. 9, 2021. The PCRA court issued a supplemental Rule 1925(a) opinion addressing the issue.

Brown raises the following issue on appeal:

> Did the PCRA court err and abuse its discretion when the court denied Mr. Brown's request for a continuance so he could be physically present for the evidentiary hearing?

Brown's Br. at 3.

Brown argues that he had a constitutional right to be physically present for the PCRA evidentiary hearing and the court erred when it denied his motion to continue and proceeded with the hearing where neither he nor the witness was physically in the courtroom. He maintains that going forward with the hearing did not advance a compelling public policy or state interest, and that the pandemic did not constitute such an interest. *Id.* at 15.

- 4 -

Brown argues that under the Sixth Amendment, he has a right to confront witnesses, and that, similar to a preliminary or suppression hearing, this right extends to the PCRA evidentiary hearing. He notes that we have stated that confrontation through a video monitor is not the same as physical face-to-face confrontation. *Id.* at 11 (citing *Commonwealth v. Atkinson*, 987 A.2d 743, 751 (Pa.Super. 2009)). He argues the evidentiary hearing is a critical stage of the proceedings "because it was a point at which his 'substantive rights [would] be preserved or lost.'" *Id.* at 14 (quoting *Commonwealth v. Holzer*, 389 A.2d 101, 107 (Pa. 1978)) (alteration in original). He notes that something less than face-to-face confrontation satisfies the right to confront witnesses where such procedures further an important public policy, and the reliability of the testimony is assured. Brown claims that the court wanted to expedite the proceedings, but that was not a sound reason to deny a constitutional right.

He further contends that the error was not harmless. He notes that both he and a witness appeared via video and it was not clear whether they could see each other. According to Brown, the use of technology constrained his ability to confer with PCRA counsel. He maintains that if he was present he could have spoken with counsel outside of the prosecutors' earshot and conferred with counsel to strategize about trial counsel's testimony during direct and cross-examination.

"The decision to grant a continuance is within the sound discretion of the [PCRA] court, and we will reverse only if the court has abused its

discretion." **Commonwealth v. Paddy**, 15 A.3d 431, 470 (Pa. 2011) (citing **Commonwealth v. Wright**, 961 A.2d 119, 133 (Pa. 2008)).

To the extent Brown's claim is based on the right to confront witnesses under the Sixth Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution, this claim is waived because he failed to raise it before the PCRA court.[4] Both at the hearing and in his supplemental Rule 1925(b) statement, he raised a claim that the court's denial of his continuance motion violated his constitutional right to be present in the courtroom. **See** N.T., 10/1/20, at 9; Supplemental Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), filed Feb. 9, 2021. We will review Brown's arguments regarding his ability to confront witnesses only to the extent that his absence from the courtroom impacted his ability to confront witness. **See Snyder v. Massachusetts**, 291 U.S. 97, 107 (1934) (noting "[c]onfusion will result . . . if the privilege of presence be identified with the privilege of confrontation, which is limited to the stages of the trial when there are witnesses to be questioned").

A "defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." **Stincer**, 482 U.S. at 745 (finding no violation where defendant was excluded from competency hearing); **Snyder**, 291 U.S. at 122 (finding jury view conducted in defendant's absence

---

[4] **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal").

did not require reversal); ***Commonwealth v. Tharp***, 101 A.3d 736, 762 (Pa. 2014). "The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, *. . .* but [the United States Supreme Court has] recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." ***United States v. Gagnon***, 470 U.S. 522, 526 (1985). Therefore, "even in situations where the defendant is not . . . confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge." ***Stincer***, 482 U.S. at 745 (citation and internal quotation marks omitted).[5]

To obtain relief where a defendant is improperly excluded from a proceeding, there must be "some prejudice resulting from the court's action." ***Commonwealth v. Ressler***, 798 A.2d 221, 223 (Pa.Super. 2002); ***see also***

_____

[5] Pennsylvania Rule of Criminal Procedure 119 governs the use of two-way simultaneous audio-video communication in criminal proceedings. Pa.R.Crim.P. 119. The comment to the rule clarifies that a defendant must consent to the use of two-way simultaneous audio-video communication at a PCRA hearing. Pa.R.Crim.P. 119, comment.

At the time of the hearing, Philadelphia was under a declaration of a district-wide judicial emergency due to the COVID-19 pandemic. The President Judge of the First Judicial District declared the emergency and suspended the "[s]tatewide rules that restrict, directly or indirectly, the use of advance communication technologies." ***In re Continuation of Judicial Emergency in First Judicial Dist.***, Slip Op. (Com. Pl. Ct. June 1, 2020); ***see also In re Gen. Statewide Judicial Emergency***, 234 A.3d 408 (Pa. 2020) (*per curiam*) (authorizing president judges to suspend "statewide rules that restrict, directly or indirectly, the use of advanced communication technologies").

*Coy v. Iowa*, 487 U.S. 1012, 1021-22 (1988) (concluding harmless error doctrine applied to violation of face-to-face confrontation claims); *Thomas v. Goldsmith*, 979 F.2d 746, 748 (9th Cir. 1992) (applying harmless error review to claim defendant was denied right to be present). Courts have found harmless error for constitutional violations where, among other things, "the error did not prejudice the defendant or the prejudice was *de minimis*." *Commonwealth v. Wright*, 961 A.2d 119, 143 (Pa. 2008) (citation omitted).

Here, the trial court concluded Brown's due process rights were not violated and he did not suffer prejudice:

> In response to the COVID-19 pandemic, the Supreme Court of Pennsylvania suspended normal operation of the Courts and issued a statewide judicial emergency ordering the closure of court facilities in Pennsylvania. Beginning May 4, 2020, the Supreme Court reopened court facilities for critical functions. To that end, the Supreme Court encouraged the President Judges of the Courts of Common Pleas to conduct court proceedings using advanced communication technologies, to the extent that constitutional requirements can be satisfied. *See* Emergency Order of Statewide Judicial Administration Applicable from May 1, 2020, Through June 1, 2020 at *4 n.3 (Nos. 531 & 532 Judicial Administration Docket, April 28, 2020). In its following May 27, 2020 Administrative Order ceasing the statewide judicial emergency, the Supreme Court specifically empowered President Judges to suspend statewide rules that restrict, directly or indirectly, the use of advanced communication technologies. *See* Cessation of Statewide Judicial Emergency After June 1, 2020 at *2 (Nos. 531 & 532 Judicial Administration Docket, May 27, 2020).
>
> On July 6, 2020, the President Judge of the First Judicial District of Pennsylvania issued an Administrative Order announcing that the Juanita Kidd Stout Center for Criminal Justice was to remain generally closed to the public, and that witnesses or defendants would only be permitted into

the facility if specifically authorized by the Court. ***See*** President Judge Administrative Order No. 47 of 2020.

On August 13, 2020, the instant matter was scheduled for an evidentiary hearing, to be held on October 1, 2020. Since the Court's closure on March 16, 2020 to the present date of February 25, 2021, the Pennsylvania Department of Corrections has not transferred inmates between state correctional facilities for purpose of later transport into local custody for post-conviction evidentiary hearings. Nor has the Philadelphia Department of Prisons accepted the transfer of inmates for this purpose.[1] In response to these circumstances, this Court arranged for [Brown] to appear via advanced video communication technology.

> [1] This Court further explored sending officials from the Philadelphia Sheriff's Office to transport the inmate directly from SCI Huntingdon to local custody, but such a plan was deemed untenable due to continued outbreaks at state and local institutions.

[Brown] fails to establish that his due process rights were violated when he attended the evidentiary hearing via video technology. Due to the ongoing COVID-19 pandemic, the Supreme Court of Pennsylvania loosened restrictions on the use of such technology to ensure the safety of not only this Court and counsel, but [Brown's] own safety as well. At the outset of the hearing, this Court explained that the current state policy prevented inmate transport to local custody and that such transportation had been suspended since March 2020. N.T. 10/1/2020 at 6-7. This Court further cautioned that it had not received any information regarding when transportation would recommence and that if the Philadelphia Sheriff's Department were to transport [Brown], he would be subject to a fourteen-day quarantine. ***Id.*** at 7-8. Ultimately, this Court determined that [Brown] was entitled to continue with his PCRA evidentiary hearing, to the speediest extent that the circumstances allowed. ***Id.*** at 10.

This Court gave [Brown] an opportunity to privately confer with counsel at the outset, during, and at the conclusion of proceedings. Through the video link, [Brown] was able to communicate with the Court by answering its questions as if he were present in the courtroom. ***Id.*** at 9. When asked,

J-S25020-21

[Brown] confirmed that he was prepared to proceed with the hearing. *Id.* During the hearing, [Brown] was able to observe witness testimony from trial counsel Benjamin Cooper Esq. and family member Thomas Wheeler. [Brown] himself testified and explained to the Court that he wanted to pursue a self-defense strategy to secure a not guilty or voluntary manslaughter verdict. *Id.* at 89-93. During his testimony, [Brown] confirmed that he heard Wheeler's testimony, and at no point indicated that he was unable to hear or participate in Mr. Cooper's testimony. *Id.* at 93. Clearly, [Brown] suffered no prejudice, and this Court did not violate any due process right or abuse its discretion in proceeding with the matter via video communications technology.

Trial Ct. Op., filed Feb. 25, 2021, at 2-4.

The PCRA court did not err. Even if denying the continuance and using advanced technology to conduct the hearing violated Brown's right to be present, Brown has not sustained prejudice. Although he was not present in the courtroom for the PCRA evidentiary hearing, the use of advanced technology allowed him to observe, hear, and participate in the hearing. Further, he had an opportunity to speak with counsel, observe the witness, and communicate with the court. He was not "excluded" from the hearing. Brown's claim that it was "unclear" whether he and the witness could see each other does not establish prejudice. Brown's Br. at 16. The PCRA court states that Brown was able to observe the witnesses. His further assertion that if he had been physically present, he could have privately consulted with counsel is likewise belied by the PCRA court, which states that it afforded Brown the opportunity to do so at the beginning of the hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/19/2021